## BERRY v. BERRY.

1. ADMINISTRATION—CROPS—AGRICULTURAL SUPPLIES—HOMESTEAD.—Proceeds of crops of decedent are applicable to payment for agricultural supplies used in producing the same as against claim of homestead by the widow.

2. IBID.—IBID.—IBID.—Proceeds of crops of decedent should be applied first to payment of taxes and obligations contracted in production.

3. IBID.—IBID.—Proceeds of crops of decedent are assets in administrator's hands, to be paid out according to Rev. Stat., 2049.

Before WATTS, J., Marion, November, 1898. Modified.

Action by E. Lide Berry against Mary E. Berry and other heirs of Elihu Berry, and H. C. Graham. From Circuit decree, defendant Graham appeals.

*Mr. Fred D. Bryant,* for appellant, cites: Sec. 32, art. II., Con.; Rev. Stat., 2133; 5 Stat., 111.

*Messrs. Johnson & Johnson,* contra, cite: Rev. Stat., 2048, 2049; Strob. Eq., 59; 33 S. C., 259.

June 3, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY. Elihu Beerry died intestate, on the 4th of October, 1894. In December thereafter, the plaintiff was duly appointed the administrator of said estate, and in a short time after entering upon the discharge of his duties as administrator, commenced this action to enjoin creditors from suing upon their claims, and to determine the

right of the widow and children of the deceased to home-stead, and for partition. The administrator filed his account, by which it appeared that he had received from all sources the sum of $1,357.83; of this amount $1,196.78 was derived from sales of the crop raised in 1894, and $161.05 from sales of other personal property. From the proceeds of the sales of said crop he paid $198.97 for expenses in gathering the crop, leaving a net balance of $997.81 from that source. This amount and the said $161.05 aggregated $1,158.86. From this amount he paid out the following amounts: Funeral expenses, $50.45; probate fees, $17.15; taxes, 1894, $87.70; Johnson & Johnson, attorneys, $25; self, commissions, $44.04; total, $224.34; leaving balance then on hand, $934.52.

The claims presented against the estate, and allowed by the master, amounted to $1,640.01, among which was the claim of Wheeler Bros. for supplies consumed in making the crop of 1894, amounting to $1,096.98. This claim was assigned to H. C. Graham. The widow claimed a home-stead exemption of $500 in the personalty. The right of homestead was not denied, but the appellant contended that it could not be allowed against his claim. He also contended that the administrator had no right to pay out any portion of the proceeds arising from the sale of said crop, beyond the necessary expenses of administering the same. The master sustained these propositions, and reported that the net proceeds of the crop should go to said claim, after the payment of its *pro rata* of the general costs and commissions, and that the widow being entitled to homestead in the $161.05, the administrator had paid out more than was allowed by law. The plaintiff and the defendant, Mary Ellen Berry, excepted to the said report.

The Circuit Judge decided that the "$161.05 and all the proceeds of the crop for agricultural supplies, which is the whole except $129.15 and $209.80, for amounts paid out by the administrator, as appears by the report, and which the Court decides is to be paid out of proceeds of crop—giving

Mary Ellen Berry $500 and to H. C. Graham, assignee, $757.03, and the Court orders that E. Lide Berry do pay to his said mother, Mary E. Berry, as a homestead, $500, and that he do pay H. C. Graham, assignee, $757.03, the balance of the crop."

H. C. Graham appealed upon exceptions, the first of which is as follows: "It is respectfully submitted that his Honor, the Circuit Judge, erred: First. In deciding and ordering that the administrator shall pay to Mary Ellen Berry, widow of the deceased, $500 as a homestead out of funds in his hands, when it appeared that the entire fund, less $161.05, was the proceeds of the crop of 1894, and the appellant's claim for agricultural supplies for the making of said crop, as found by the master, amounted to more than the reported net proceeds of said crop; and in not deciding that the proceeds of said crop were first applicable to the payment of said claim in preference to the widow's claim for homestead." As hereinbefore stated, the claim of H. C. Graham amounted to $1,096.98, but $129.15 thereof was not for supplies used in making the crop. The portion of the claim for supplies advanced in making the said crop was, therefore, $967.83. The amount on hand after paying the expenses of said crop, and which arose from the sale thereof, was $997.81. It does not seem to be contended that the said $129.15 should be paid in preference to the claim of homestead, but even if it had been so contended, it would not be allowed. We will, therefore, consider whether the said $997.81 is first applicable to the claim of homestead or to the account for supplies consumed in making the said crop. Section 32, article II., Constitution 1868, contains the following: "Provided, further, That the yearly products of said homestead shall not be exempt from attachment, levy or sale for the payment of obligations contracted in the production of the same. It shall be the duty of the General Assembly at their first session to enforce the provisions of this section by suitable legislation." Sec. 2133, Rev. Stat., contains the following: "Provided, further, The yearly product of said

20—55

homestead shall be subject to attachment, levy and sale to secure or enforce the payment of obligations contracted for provisions or other necessary articles purchased, or advances in money or merchandise procured to be used or expended in the production of the same, or of other obligations contracted in the production of the same, and of none other." From the foregoing it clearly appears that the proceeds derived from the sale of the crop are first applicable to that portion of the appellant's account for articles advanced in the making of said crop, in preference to the claim of homestead.

The second exception is as follows: "Second. In deciding and ordering that the administrator's account for funeral expenses, attorneys' fees, probate fees, taxes, etc., amounting to $338.95, should be paid out of the proceeds of the said crop in preference to the appellant's claim for agricultural supplies for the making of said crop, and in not deciding that the appellant's claim was to be paid out of the proceeds of said crop in preference. to such claims." Sec. 2049 of the Rev. Stat. is as follows: "If any person shall die after the first day of March in any year, the crop on the lands which were in the occupation of the deceased shall be assets in the executor's or administrator's hands, subject to debts, legacies and distribution, the taxes and cultivation of such crop being first paid." Under this section, the proceeds of the crop are first applicable to the payment of taxes and of obligations contracted in the production of the same, and in so far as the decree of the presiding Judge conflicts with this ruling, it is erroneous.

The third exception is as follows: "Third. In not holding that the proceeds of the crop of 1894 were not assets in the administrator's hands until the expenses of the cultivation of such crops were first paid, and the appellant's claim being for such expenses, the administrator was not justified in applying any part thereof to any other claim whatsoever." Section 2049 is not susceptible of the construction that the crop was not assets in the adminis-

trator's hands until the expenses of the cultivation of such crop were first paid. The intention of the statute was, in the first place, to make the crops therein mentioned, assets in the hands of the executor or administrator, and, in the second place, to provide that the said assets should be applied to the payment of taxes and of obligations contracted in the production of the crops, before being distributed under section 2048 of the Rev. Stat., or under the provisions of a will, when the deceased dies leaving a will. We fail to discover any expression tending to sustain the view for which the appellant contends.

The conclusion of this Court in considering the foregoing exceptions, renders unnecessary a consideration of the fourth exception.

It is the judgment of this Court, that the judgment of the Circuit Court be modified in the particulars hereinbefore mentioned.